**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

Case No. 06-32299

RICK MOREY GRANT
a/k/a MOREY GRANT
ANGELLE NMN GRANT
a/k/a ANGELA GRANT
a/k/a ANGELA DEAN

                Debtors

In re

Case No. 06-32318

TERRY W. MOSHER

                Debtor

**MEMORANDUM ON CHAPTER 13
<u>TRUSTEE'S OBJECTIONS TO CONFIRMATION</u>**

**APPEARANCES:**    LAW OFFICES OF MAYER & NEWTON
                            Richard M. Mayer, Esq.
                            John P. Newton, Jr., Esq.
                            1111 Northshore Drive
                            Suite S-570
                            Knoxville, Tennessee  37919
                            Attorneys for Debtors

                            GWENDOLYN M. KERNEY, ESQ.
                            Post Office Box 228
                            Knoxville, Tennessee  37901-0227
                            Chapter 13 Trustee

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

Before the court is the Chapter 13 Trustee Objection to Confirmation (Objection to Confirmation) filed by the Chapter 13 Trustee in both of these bankruptcy cases by which she opposes confirmation on the grounds that the Debtors do not propose to pay all of their disposable income into their respective plans for the required "applicable commitment period."  11 U.S.C. § 1325(b)(4) (2006).  As set forth in the Supplemental Joint Statement of Issues and Supplemental Joint Stipulation of Facts filed by the parties, "[t]he issue for determination . . . is not the amount of disposable income to be paid into the plan as the parties hereby stipulate that the projected and/or disposable income available and necessary to fund [the plan proposed by Rick and Angelle Grant is $64.00 weekly and the projected and/or disposable income available and necessary to fund the plan proposed by Terry Mosher is $334.00 bi-weekly] . . . . [T]he sole issue for determination by the Court is whether the required plan length under 11 U.S.C. § 1325(b)(4) is three or five years."

At the preliminary hearing held on January 31, 2007, the parties agreed that an evidentiary hearing would not be required and that all issues could be decided on stipulations and briefs. Because the confirmation issue is identical in both cases, the court has consolidated its ruling into this single Memorandum.

This is a core proceeding.  28 U.S.C. § 157(b)(2)(L) (2006).

## I

### A

The Debtors in case number 06-32299, Rick and Angelle Grant (the Grants), filed the Voluntary Petition commencing their Chapter 13 case on October 5, 2006.  Their Chapter 13 Plan

2

(Plan) proposes weekly payments to the Chapter 13 Trustee of $64.00 for 36 months, plus all tax refunds, with a proposed dividend of 5-20% to nonpriority unsecured creditors. The Trustee filed her Objection to Confirmation on November 16, 2006.

The parties filed a Joint Statement of Issues and a Joint Stipulation of Facts on January 23, 2007, as well as a Supplemental Joint Statement of Issues and Supplemental Joint Stipulation of Facts on February 13, 2007. The Trustee filed her Brief in Support of Objection of Trustee to Confirmation of Plan on January 23, 2007, and the Trustee's Supplementary Brief Regarding Projected Disposable Income in Support of Objection of Trustee to Confirmation of Plan on February 13, 2007. The Debtors filed the Debtor's [sic] Brief in Support of Confirmation of Chapter 13 Plan on January 24, 2007, and the Debtors['] Supplemental Brief in Support of Confirmation of Chapter 13 Plan on February 13, 2007. The parties have stipulated that the Grants' annualized current monthly income as set forth on line 21 of their Form B22C, the means test form, is $51,372.00, which exceeds the median income for a 2-person family in Tennessee.[1] The parties also stipulate that the Grants' monthly disposable income as evidenced on line 58 of their Form B22C is a negative ($284.16), and their average or projected monthly net income at the time their case was filed, as evidenced by their Schedules I and J, was $277.49.[2] As noted, the parties have also

---

[1] According to the Census Bureau Median Family Income by Family Size table located on the website for the U.S. Trustee Program, http://www.usdoj.gov/ust/eo/bapcpa/20061001/bci_data/median_income_table.htm, the median income for a family of 2 persons in Tennessee for cases filed between October 1, 2006, and January 31, 2007, is $42,126.00.

[2] The Grants' Schedule I - Current Income of Individual Debtor(s) filed with their petition evidences that their combined average or projected monthly income on October 5, 2006, was $3,702.00 while Schedule J - Current Expenses of Individual Debtor(s) establishes that their average or projected monthly expenses on this date were $3,424.51.

3

stipulated that "the required disposable income to fund this [P]lan for purposes of confirmation is $64.00 weekly."

**B**

The Debtor in case number 06-32318, Terry W. Mosher (Mosher), filed the Voluntary Petition commencing his Chapter 13 case on October 6, 2006. His Chapter 13 Plan (Plan) proposes bi-weekly payments of $334.00 for 36 months, plus all tax refunds, with a proposed dividend of 5-20% to nonpriority unsecured creditors. The Trustee filed her Objection to Confirmation on November 16, 2006.

The parties filed a Joint Statement of Issues and a Joint Stipulation of Facts on January 23, 2007, as well as a Supplemental Joint Statement of Issues and Supplemental Joint Stipulation of Facts on February 13, 2007. The Trustee filed her Brief in Support of Objection of Trustee to Confirmation of Plan on January 23, 2007, and the Trustee's Supplementary Brief Regarding Projected Disposable Income in Support of Objection of Trustee to Confirmation of Plan on February 14, 2007. The Debtor filed the Debtor's Brief in Support of Confirmation of Chapter 13 Plan on January 24, 2007, and the Debtor['s] Supplemental Brief in Support of Confirmation of Chapter 13 Plan on February 13, 2007. The parties have stipulated that Mosher's annualized current monthly income as set forth on line 21 of their Form B22C, the means test form, is $46,464.00, which exceeds the median income for a 2-person family in Tennessee.[3] The parties also stipulate that his monthly disposable income as evidenced on line 58 of his Form B22C is a negative

---

[3] *See supra* n.1.

($394.08), and that his average or projected monthly net income at the time his case was filed, as evidenced by Schedules I and J, was $723.98.[4]  As noted, the parties have also stipulated that "the required disposable income to fund this [P]lan for purposes of confirmation is $334.00 bi-weekly."

## II

The Trustee contends that the "applicable commitment period," as determined under 11 U.S.C. § 1325(b)(4)(A), is temporal, and that because the Debtors in both cases have incomes above the median family income, they may not propose plans that are shorter than five years in length.  In opposition, the Debtors contend that because they have negative monthly disposable income as evidenced by their respective Form B22C means test forms, they are not actually required to pay anything to unsecured creditors, and thus, they are allowed to propose plans for the minimum three year length set forth in § 1325(b)(4)(A).

## III

Following years of debate, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) became effective on October 17, 2005, for all cases filed on and after that date.[5]  One section receiving revision under Chapter 13 was 11 U.S.C. § 1325 (2006), which sets forth at

---

[4] Mosher's Schedule I - Current Income of Individual Debtor(s) filed with his petition evidences that on October 6, 2006, his and his wife's combined average or projected monthly income was $3,287.00 while Schedule J - Current Expenses of Individual Debtor(s) establishes that his average or projected monthly family expenses on the same date were $2,563.02.

[5] Certain of BAPCPA's provisions became effective on April 20, 2005, the date of enactment, but these provisions are not germane to the issue presently before the court.

5

subsection (a), a list of confirmation requirements and at subsection (b), a disposable income test.

As it relates to the present contested matters, § 1325(b) provides, in material part:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> . . . .
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
>
> (2) For purposes of this subsection, the term "disposable income" means current monthly income[6] received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—
>
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
>
> (ii) for charitable contributions . . . [.]
>
> . . . .
>
> (3) Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than—

---

[6] The term "current monthly income"—

(A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on—

> (i) the last day of the calender month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii)[.]

11 U.S.C. § 101(10A) (2006).

> . . . .
>
> (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals[.]
>
> . . . .
>
> (4) For purposes of this subsection, the "applicable commitment period"—
>
> (A) subject to subparagraph (B), shall be—
>
> (i) 3 years; or
>
> (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than—
>
> . . . .
>
> (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; []
>
> . . . .
>
> (B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed secured claims over a shorter period.

11 U.S.C. § 1325(b).

Nevertheless, "BAPCPA did not replace the Bankruptcy Code, it amended and added several new provisions. As a result, any analysis must start with the ample statutory interpretation, legislative history (along with stated policies), and case law development from the 1978 Code, unless it is clear that there has been an abrogation." *In re Grady*, 343 B.R. 747, 751 (Bankr. N.D. Ga. 2006).

**IV**

The issue to be determined is whether the newly added "applicable commitment period" set forth in § 1325(b)(4) is a temporal measurement or a multiplicand, and thus, whether the Debtors, who are undisputedly above-median income debtors, must propose five-year plans.

"When interpreting a statute, [courts] must begin with its plain language, and may resort to a review of congressional intent or legislative history only when the language of the statute is not clear." *Hoffman v. Comshare, Inc. (In re Comshare, Inc. Sec. Litig.)*, 183 F.3d 542, 549 (6th Cir. 1999). Moreover,

> when interpreting statutes, courts are generally obligated to look at the statute as a whole. "When interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute . . . and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature."

*Azarte v. Ashcroft*, 394 F.3d 1278, 1287-88 (9th Cir. 2005) (quoting *Kokoszka v. Belford*, 94 S. Ct. 2431, 2436 (1974) (citation omitted)) (internal citation omitted). "[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *United States v. Ron Pair Enters., Inc.*, 109 S. Ct. 1026, 1030 (1989).

Additionally, the Supreme Court "ha[s] stated time and time again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is

complete.'" *Conn. Nat'l Bank v. Germain*, 112 S. Ct. 1146, 1149 (1992) (quoting *Rubin v. United States*, 101 S. Ct. 698, 701 (1981)).

> "The starting point in any case involving the meaning of a statute [] is the language of the statute itself." *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 210, 99 S.Ct. 1067, 1073, 59 L.Ed.2d 261 (1979); *Vergos v. Gregg's Enterprises, Inc.*, 159 F.3d 989, 990 (6th Cir. 1998). A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning. *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). "In construing a federal statute, it is appropriate to assume that the ordinary meaning of the language that Congress employed 'accurately expresses its legislative purpose.'" *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 164, 105 S.Ct. 638, 645, 83 L.Ed.2d 556 (1985), quoting *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 195, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). "If the words of the statute are unambiguous, the judicial inquiry is at an end, and the plain meaning of the text must be enforced." *Hudson v. Reno*, 130 F.3d 1193, 1199 (6th Cir. 1997), *cert. denied*, 525 U.S. 822, 119 S.Ct. 64 (1998), quoting *United States v. Ron Pair Entrs., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

*United States v. Plavcak*, 411 F.3d 655, 660-61 (6th Cir. 2005). "A court should look beyond the language of the statute only when the text is ambiguous or when, although the statute is facially clear, a literal interpretation would lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress." *Dorris v. Absher*, 179 F.3d 420, 429 (6th Cir. 1999).

The "applicable commitment period" of § 1325(b)(4) only comes into play when a chapter 13 trustee or the holder of an allowed unsecured claim objects to confirmation of a debtor's plan, at which time, a plan may not be confirmed unless, as of the effective date of the plan, it provides for payment to unsecured creditors of all of the debtor's "projected disposable income to be received in the applicable commitment period." 11 U.S.C. § 1325(b)(1)(B). If triggered, § 1325(b)(4) then provides (1) that the "applicable commitment period" shall be three years; (2) that if the debtor's

annualized "current monthly income" is higher than the median family income for families with the same number in the household, the "applicable commitment period" is five years; or (3) that if the plan proposes to pay allowed unsecured claims in full, the plan may be less than three or five years, whichever is applicable. *See* 11 U.S.C. § 1325(b)(4).

Based upon the wording of the statute, the court finds that "applicable commitment period" is a temporal measurement. Subsection (b)(4) speaks only in terms of specific time increments; i.e., three years, five years, or fewer years in the event that allowed unsecured claims will be paid in full. There is language within this subsection that expressly refers to a multiplicand with respect to whether a debtor's income falls above or below the median income, but there are no terms indicating that the three or five year time periods expressly set forth therein are to be interpreted as anything other than specific time periods for the length of the "applicable commitment period."

"Applicable commitment period" is not defined by the Bankruptcy Code. Therefore, the court must look at the plain, ordinary meaning. "Applicable" is defined by *Webster's New Collegiate Dictionary* as "capable of or suitable for being applied." WEBSTER'S NEW COLLEGIATE DICTIONARY 54 (1979). "Commitment" is defined as "an act of committing to a charge or trust; . . . [or] an agreement or pledge to do something in the future[.]" WEBSTER'S NEW COLLEGIATE DICTIONARY 224 (1979). "Period" is defined as "a chronological division[.]" WEBSTER'S NEW COLLEGIATE DICTIONARY 845 (1979).

> The terms "commitment" and "period" are . . . terms that by their ordinary, everyday meaning contemplate or suggest action by the debtor over a period of time. They connote an obligation to do something over a period of time. They do not on their face connote a formula to arrive at a value or an amount, at least not in their ordinary everyday meaning.

*In re Davis*, 348 B.R. 449, 456 (Bankr. E.D. Mich. 2006).  These definitions, in conjunction with the express denotations of three and five years set forth in the statute, clearly refer to a specific temporal measurement, based upon whether a debtor has an annual income that is either above or below the median income.

> Taken together in the context of the Bankruptcy Code, "applicable commitment period" thus stands for the appropriate length of time during which the debtor has agreed to make payments.  It is hard to imagine analyzing the "plain meaning" of "applicable commitment period" and coming to the conclusion that the word "period" means anything other than "time."  Had Congress wanted to signify a multiplicand, rather than a temporal period, it could easily have done so; it did just that in numerous other areas of the Bankruptcy Code, including other areas of Section 1325.

*In re Slusher*, ___ B.R. ___, 2007 Bankr. LEXIS 127, at *29, 2007 WL 118009, at *8 (Bankr. D. Nev. Jan. 17, 2007).  This conclusion has also been reached by the majority of courts that have decided this issue.  *See, e.g., In re Casey*, 356 B.R. 519, 527 (Bankr. E.D. Wash. 2006) (holding that subsection (b)(4) "makes no reference to any monetary analysis to be used in determining the length of the plan, but refers to a measurement of time"); *In re Dew*, 344 B.R. 655, (Bankr. N.D. Ala. 2006) ("Inasmuch as sections 1322(d)(2) and 1329(c) deal with extending the duration of a plan confirmed under section 1325, the only logical conclusion is that the applicable commitment period under section 1325(b)(4)(A) must be a period of time either three or five years, depending on the median income of the debtor."); *In re Beasley*, 342 B.R. 280, 284 (Bankr. C.D. Ill. 2006) ("If Congress had desired to build flexibility into the determination of the applicable commitment period, it could have done so."); *In re Cushman*, 350 B.R. 207, 212 (Bankr. D.S.C. 2006) ("The Bankruptcy

Code never refers to the 'applicable commitment period' as a multiplier or anything other than that which it purports to be, i.e., a length of time for a debtor to perform a plan.").[7]

Accordingly, because the Grants and Mosher have annualized "current monthly income" above the median income for families of their size in Tennessee, it would appear that § 1325(b)(4) clearly mandates a five-year plan. The Debtors argue, however, that because their disposable incomes, as defined by § 1325(b)(2), are negative numbers, they are not required to pay anything to unsecured creditors, so in essence, as long as they meet the other confirmation requirements of §§ 1322 and 1325, they may propose a plan for whatever length of time they desire in compliance with those Code sections.

In support of their argument, the Debtors rely upon *In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006), in which the court found that "applicable commitment period" was temporal, holding as follows:

> Because applicable commitment period is a term the statute makes relevant only with regard to the required payment of projected disposable income to unsecured creditors

---

[7] In fact, the court finds only one case holding that "applicable commitment period" is a multiplier. Finding the term "applicable commitment period" to be ambiguous, the *Fuger* court reverted to Congressional intent and determined that Congress intended for "applicable commitment period" to "serve as *both* a temporal and monetary requirement." *In re Fuger*, 347 B.R. 97-98 (Bankr. D. Utah 2006). The court found it significant that "applicable commitment period" replaced "three-year period," which it held was also a monetary and temporal term, while leaving the term "projected disposable income" in § 1325(b)(1) untouched, resulting in "an inquiry whereby the Court must still require chapter 13 plans to provide payments based on disposable income projected into the future." *Fuger*, 347 B.R. at 98-99. In summary, the *Fuger* court held that

> Congressional intent underlying the amendments to § 1325(b)(1)(B) is clear – the term "applicable commitment period" is both a monetary and a temporal provision. It is monetary in the sense that it has always required debtors to commit to pay unsecured creditors a set return. It is temporal in the sense that it has always required debtors to determine that return by projecting over a specific time period, and it provides debtors with a time limit for performing under a chapter 13 plan.

*Fuger*, 347 B.R. at 99.

12

> and not to any other plan payments or requirements, it simply does not come into play where no projected disposable income must be taken into account. This is consistent with a plain reading of the Code.

*Alexander*, 344 B.R. at 751. The court also stated that, although not defined by the Bankruptcy Code, "projected disposable income has been traditionally calculated in conjunction with the definition of disposable income," and thus determined that the term "projected disposable income" as referred to in § 1325(b)(1) is synonymous with "disposable income" as defined by § 1325(b)(2). *Alexander*, 344 B.R. at 749.

In summary, the *Alexander* court held that "[w]hat is now considered 'disposable' is based upon historical data – current monthly income derived from the six-month period preceding the bankruptcy filing . . . [and] in order to arrive at 'projected disposable income,' one simply takes the calculation mandated by § 1325(b)(2) and does the math." *Alexander*, 344 B.R. at 749; *see also In re Brady*, ___ B.R. ___, 2007 Bankr. LEXIS 501, at *25, 2007 WL 549359, at *9 (Bankr. D.N.J. Feb. 13, 2007) ("While it is recognized that the BAPCPA revisions to section 1325(b) have generated a greater focus upon the term 'projected,' particularly where a debtor's financial circumstances have changed or are 'virtually certain' to change during the plan, adherence to the statutory formula is required where no such changes exist."); *In re Hanks*, ___ B.R. ___, 2007 Bankr. LEXIS 46, at *13, 2007 WL 60812, at *4 (Bankr. D. Utah Jan. 9, 2007) ("In 'projecting' a return to general unsecured creditors under the BAPCPA for above-median debtors, this Court's view is that its new function is solely to multiply the net 'disposable income' figure as calculated on Form B22C by the applicable commitment period. No more, no less."); *In re Girodes*, 350 B.R. 31, 36 (Bankr. M.D.N.C. 2006) ("[D]isposable income and projected disposable income are one and the same and

have been defined by 11 U.S.C. § 1325(b)(2)."); *In re Rotunda*, 349 B.R. 324, 331 (Bankr. N.D.N.Y. 2006) ("The argument that Congress intended something more when it referred to 'projected' in Code § 1325(b)(1)(B) fails to address the fact that Congress defined 'disposable income' after that provision in Code § 1325(b)(2).").

The majority view, however, holds that "projected disposable income" is not synonymous with "disposable income" as defined by § 1325(b)(2). This view is grounded primarily upon the normal, ordinary meaning of "projected" which is forward-looking, rather than the historical view provided by the § 101(10A) definition of "current monthly income" and the figures found in Form B22C. *See Casey*, 356 B.R. at 522 ("The word 'projected' means to plan, figure, or estimate for the future. It is a forward-looking concept. It requires a court to examine anticipated disposable income rather than historical disposable income, estimated disposable income, or some other type of disposable income.") (footnote and citation omitted).

> Projected disposable income has a broader meaning than disposable income. Quite simply, "projected" is a forward-looking term, whereas disposable income relies only on historical income data. A debtor's payment obligations in a Chapter 13 case involves more than merely multiplying the historical disposable income figure from the means test by the number of months plan payments are required. Rather, courts must consider changes in circumstances, both increases and decreases to income and expenses, to a debtor's financial situation, being always guided by the allowed methodology set forth in the means test.

*In re LaPlana*, ___ B.R. ___, 2007 Bankr. LEXIS 329, at *16-17, 2007 WL 431627, at *5 (Bankr. M.D. Fla. Feb. 9, 2007). Insofar as the term "disposable income" demands a look back and the term "projected" requires a look forward, the language is irreconcilable. *In re Kibbe*, ___ B.R. ___, 2007 WL 512753, at *8 (B.A.P. 1st Cir. Feb. 20, 2007).

This view is also based upon another of the basic tenants of statutory interpretation, i.e., "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Herman v. Fabri-Centers of Am., Inc.*, 308 F.3d 580, 588 (6th Cir. 2002) (citing *Russello v. United States*, 104 S. Ct. 296, 300 (1983)). "Applying this rule, . . . Congress intended to modify 'disposable income' with the word 'projected' in § 1325(b)(1)(B) and intentionally omitted 'projected' when defining 'disposable income' in § 1325(b)(2)." *In re Devilliers*, ___ B.R. ___, 2007 Bankr. LEXIS 75, at *16, 2007 WL 92504, at *5 (Bankr. E.D. La. Jan. 9, 2007). "It would be inappropriate to give heed only to the historical perspective set forth in the term 'disposable income,' as this would effectively write the term 'projected' out of § 1325(b)." *Kibbe*, ___ B.R. ___, 2007 WL 512753, at *9; *see also In re Demonica*, 345 B.R. 895, 900 (Bankr. N.D. Ill. 2006) ("Specifically, § 1325(b)(1)(B) refers to 'projected disposable income' while subsection (b)(2) defines 'disposable income.' To equate the terms would be to render the term 'projected' superflous."). "To require all debtors to propose plans paying the number resulting from Form B22C would essentially ignore the word 'projected' and give meaning only to the term 'disposable income.' The only way for the word 'projected' to have independent significance is if the word modifies the term 'disposable income.'" *In re Jass*, 340 B.R. 411, 416 (Bankr. D. Utah 2006).

The *Hardacre* court set forth the following concise summary of this side of the argument:

The court believes that the term "projected disposable income" must be based upon the debtor's anticipated income during the term of the plan, not merely an average of her prepetition income. This conclusion is buttressed not only by the anomalous results that could occur by strictly adhering to section 101(10A)'s definition of

15

> "current monthly income," but because, taken as a whole, section 1325(b)(1) commands such a construction.
>
> First, section 1325(b)(1)(B)'s use of the phrase "projected disposable income" rather than "disposable income" is instructive. The court is to presume that "Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another. . . ." *BFP v Resolution Trust Corp*, 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1993). While Congress could have used the phrase "disposable income" in section 1325(b)(1)(B) and thereby invoked its definition as set forth in section 1325(b)(2), it chose not to do so. Consequently, Congress must have intended "projected disposable income" to be different than "disposable income."
>
> Next, section 1325(b)(1)(B) refers to the projected disposable income "*to be received* in the applicable commitment period." (Emphasis supplied). If Congress had intended that projected disposable income for plan purposes be based solely on prepetition average income, this language would be superfluous. This suggests that Congress intended to refer to the income actually to be received by the debtor during the commitment period, rather than prepetition average income.
>
> Finally, section 1325(b)(1) requires the court to determine whether a debtor is committing all of her projected disposable income "as of the effective date of the plan." 11 U.S.C. § 1325(b)(1). This language suggests that the debtor's income "as of the effective date of the plan" is the one that is relevant to the calculation of "projected disposable income," not her income prior to filing. Consequently, "projected disposable income" under section 1325(b)(1)(B) necessarily refers to income that the debtor reasonably expects to receive during the term of her plan.
>
> This does not mean that section 101(10A)'s definition of current monthly income is irrelevant to the calculation of projected disposable income. Section 101(10A) continues to apply inasmuch as it describes the sources of revenue that constitute income, as well as those that do not. 11 U.S.C. § 101(10A).

*In re Hardacre*, 338 B.R. 718, 722-23 (Bankr. N.D. Tex. 2006); *see also In re Riggs*, ___ B.R. ___, 2007 WL 601535, at *3 (Bankr. E.D. Ky. Feb. 27, 2007) (adopting the *Hardacre* line of reasoning).

Based upon the reasons articulated by the *Hardacre* court, and as further discussed herein, the court agrees with the majority view and finds that "projected disposable income" under § 1325(b)(1)(B) is not synonymous with "disposable income" under § 1325(b)(2). In addition to

ignoring Congress' use of the term "projected," a finding that Form B22C represents both "projected disposable income" and "disposable income" fails to acknowledge the importance of all terms stated in § 1325(b)(1) and would effectively serve to judicially write those terms out of the statute. First, as previously stated, § 1325(b) only comes into play if there is an objection filed by the Chapter 13 trustee or an unsecured creditor. Second, § 1325(b)(1)(B) prohibits the court from approving the plan unless, "*as of the effective date of the plan*" (emphasis added), the plan provides that (1) all of the debtor's "projected disposable income" (2) "*to be received*" (emphasis added) in the "applicable commitment period" (3) "*beginning on the date that the first payment is due under the plan*" (emphasis added) (4) will be paid to unsecured claimants. "The key date for determining projected disposable income is the date the court confirms the debtor's Chapter 13 plan, which is, of course, the same date the court assesses whether the debtor has met all of the standards of Section 1325 of the Bankruptcy Code." *LaPlana*, ___ B.R. ___, 2007 Bankr. LEXIS 329, at *17, 2007 WL 431627, at *5.

"By viewing the historical calculations of disposable income through the prism of current circumstances, the Court may both 'project' debtor's future disposable income and give effect to the entirety of the Code's provisions." *Devilliers*, ___ B.R. ___, 2007 Bankr. LEXIS 75, at *19, 2007 WL 92504, at *5. Accordingly, the court agrees that the starting point for determination of "projected disposable income" is Form B22C.

> The court will presume that figure is the income projected to be received by the debtor during the term of the Chapter 13 plan unless the debtor, the trustee, or an unsecured creditor who has objected to confirmation of the plan can show that a substantial change in circumstances exists such that the court may conclude that the presumed figure does not reasonably project debtor's income in the future.

*In re Zimmerman*, No. 06-31086, 2007 Bankr. LEXIS 410, at *25, 2007 WL 295452, at *7 (Bankr. N.D. Ohio Jan. 29, 2007).

> The numbers resulting from the calculations on Form B22C represent a starting point for the Court's inquiry. It represents a floor, not a ceiling. Such a construction gives the Court the ability to evaluate the debtor's past and current financial status to determine a debtor's disposable income when a debtor's circumstances change from the six months preceding the filing of the petition.

*In re Risher*, 344 B.R. 833, 836-37 (Bankr. W.D. Ky. 2006) (finding that even under BAPCPA, disposable income includes tax refunds).

> [I]f the number on line 58 of Form B22C accurately represents the anticipated future income of the debtor, the court will likely use it as "projected disposable income," in large part because, by hypothesis, there are no facts which could rebut the presumption. Yet in certain circumstances, such as when a debtor gains or loses a job or when he or she receives an increase or decrease in pay immediately before filing bankruptcy, Form B22C is less authoritative, and serves only as a starting point for an investigation that will include an examination of Schedules I [and] J.

*Slusher*, ___ B.R. ___, 2007 Bankr. LEXIS 127, at *17-18, 2007 WL 118009, at *6.

## V

In summary, the court finds that "applicable commitment period" is a temporal measurement that comes into play if the trustee or the holder of an allowed unsecured claim objects to confirmation of the proposed plan. The debtor is then required to propose a plan of either three or five years, depending on the debtor's annualized current monthly income in relation to the applicable state median family income. Additionally, the court finds that "projected disposable income" differs from "disposable income" as defined by § 1325(b)(2). A debtor's monthly disposable income as reflected on Form B22C is the starting point by which a court determines the debtor's projected disposable income, but this figure can be rebutted by evidence that the debtor's actual net disposable

income as of the filing date, reflected on Schedules I and J, as well as other evidence that the debtor's circumstances have changed as of the effective date of the plan. To state it more succinctly, the historical "current monthly income," determined under § 101(10A) as set forth on Form B22C, will determine the "applicable commitment period" under § 1325(b)(4) without consideration of "projected disposable income" under § 1325(b)(1)(B).

With respect to the Debtors herein, because they have above-median family incomes, the "applicable commitment period" is not less than five years as set forth in § 1325(b)(4)(A)(ii)(II).[8] The Chapter 13 Trustee's Objections to Confirmation will accordingly be sustained. Confirmation of the Chapter 13 Plans filed by the respective Debtors will be denied. The Debtors will, however, be allowed ten (10) days to move for conversion or dismissal or to file and serve amended plans providing for the five-year "applicable commitment period." A future hearing date will be fixed.

FILED: March 19, 2007

                              BY THE COURT

                              */s/  RICHARD STAIR, JR.*

                              RICHARD STAIR, JR.
                              UNITED STATES BANKRUPTCY JUDGE

---

[8] Interestingly, and not withstanding their arguments to the contrary, the Grants and Mosher checked a block on the first page of the Form B22C they signed and filed in each case declaring that "according to the calculations required by this statement . . . [t]he applicable commitment period is 5 years."